| | |
|---|---|
| BROOKS BELL INTERACTIVE, INC., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION No. _____ |
| HEAP INC., | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff Brooks Bell Interactive, Inc. ("Brooks Bell" or "Plaintiff") files this Complaint against Defendant Heap Inc ("Heap" or "Defendant") and alleges and states as follows:

## NATURE OF THE ACTION

1. This action arises from Defendant's ongoing federal trademark infringement and unfair competition involving certain trade and service marks owned by Brooks Bell. Brooks Bell asserts claims against Defendant for federal trademark infringement (Count I), federal unfair competition (Count II), and unfair competition – common law (Count III).

## FACTUAL BACKGROUND

### I. Parties, Venue and Jurisdiction.

2. Plaintiff Brooks Bell Interactive, Inc. is a North Carolina corporation with its principal place of business located at 711 Hillsborough Street Suite 200 Raleigh, North Carolina 27603.

3. Defendant Heap Inc. is a Delaware Corporation with its principal place of business located at 225 Bush Street, Suite 200. San Francisco, California 94104.

4. This Court has subject matter jurisdiction in this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1332(a)(1) and 1338(a) and (b). Specifically, this Court has personal jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in dispute between the Parties is more than $75,000, and complete diversity of citizenship exists.

5. Venue is proper in this Court under 28 U.S.C. § 1391.

6. This Court has personal jurisdiction over the Defendant as it has sufficient minimum contacts with the forum state to reasonably anticipate being haled into Court in North Carolina based among other things, its dealings with Plaintiff as described herein.

## II. Brooks Bell, The Brooks Bell Software, and Its ILLUMINATE Mark.

7. Brooks Bell provides customized software solutions that combine quantitative data with qualitative research to uncover customers' motivations, actions and needs for use in website optimization, analytic services, and related goods and services in the United States and various international jurisdictions.

8. Brooks Bell owns trademarks using various names and logos to identify software products and related website optimization and analytic services, including U.S. Registration No. 5,638,239 (the "ILLUMINATE Mark"), filed in 2015 and issued December 25, 2018. A true and correct copy of federal trademark registration for the ILLUMINATE Mark is attached as Exhibit 1, and incorporated herein by reference.

9. The ILLUMINATE Mark is well-known in the industry through the widespread, continuous, and prominent use by Brooks Bell in interstate commerce since at least as early as May of 2018.

10. The federal registration of the ILLUMINATE Mark remains valid and is in full force and effect. Such registrations constitute evidence of Brooks Bell's exclusive right to use and

control the ILLUMINATE Mark in connection with website optimization software, analytic services, and related goods and services.

11. Brooks Bell also owns common law rights to its ILLUMINATE Mark by virtue of its widespread, continuous and prominent use of the ILLUMINATE Mark to market, advertise, distribute, offer for sale and sell website optimization software, analytic services, and related goods and services offered by Brooks Bell.

12. Brooks Bell is the owner of all right, title and interest in and to the ILLUMINATE Mark, which serves to uniquely identify Brooks Bell's website optimization software, analytic services, and related goods and services. The ILLUMINATE Mark is inherently distinctive and serves to identify and indicate Brooks Bell as the source of website optimization software, analytic services, and related goods and services to the relevant consuming public throughout the United States and represents substantial and valuable goodwill.

### III.  Defendant's Infringement of the ILLUMINATE Mark.

13. Defendant provides website optimization software, analytic services, and related goods and services.

14. Defendant has previously and continues to market, advertise, offer for sale, distribute, and sell in interstate commerce certain goods and services using the names ILLUMINATE and HEAP ILLUMINATE (the "Infringing Marks") identical or virtually identical to the ILLUMINATE Mark. Representative samples of Defendant's use of the Infringing Marks are set out below and in Exhibit 2, which is incorporated herein by reference.



(Screen capture April 14, 2023– url provided for convenience: Heap Illuminate - Heap | Heap.)



(Screen capture April 14, 2023– url provided for convenience: Heap - Better Insights.Faster. | Heap.)

4



(Screen capture April 14, 2023– url provided for convenience: Heap - YouTube.)



(Screen capture April 14, 2023– url provided for convenience: Introducing Heap Illuminate - YouTube.)

15. Defendant had actual and constructive knowledge of Brooks Bell's widespread, continuous, and prominent use of the ILLUMINATE Mark prior to Defendant's unauthorized use of the ILLUMINATE Mark.

16. Indeed, a years-long business relationship between the Defendant and Brooks Bell had begun at least as early as 2017.

17. In 2017, Defendant entered a contract with Brooks Bell for Defendant to be a Vendor Sponsor of the Brooks Bell's 2017 Click Summit conference for $20,000. True and accurate copies of the Vendor Sponsor contract and invoice are attached as Exhibits 3 and 4, and incorporated herein by reference. The conference was held May 17 – 19, 2017, in Cary, North Carolina, at the Umstead Hotel & Spa.

18. Defendant attended the 2017 Click Summit conference in North Carolina, in May 2017.

19. Click Summit is the premier event for enterprise brands building world-class testing and optimization programs where leading experts in testing, optimization, and digital analytics meet to discuss the current state of testing, including the important of effectively sharing testing knowledge among team members, the use of behavioral economic to fuel testing strategies, and mobile experimentation strategies that work.

20. As a Vendor Sponsor of the 2017 Click Summit conference, Defendant received promotion of its name, logo and company information in the 2017 Click Summit conference promotional materials, the conference attendee list, and a Session Leader in-person conversation with conference attendees led by a Defendant representative.

21. Defendant's in-person Session Leader conversation was entitled "Layering Long-term Thinking into Experimentation strategy: Testing Throughout the Customer Lifecycle," and was presented by Defendant's founder, Ravi Parikh. A true and accurate copy of a brochure from the 2017 Click Summit conference entitled, "Clickaways" is attached as Exhibit 5 and incorporated by reference.

22. As reflected in Exhibit 5, Defendant's Session Leader conversation delivered by Ravi Parikh was promoted as:

> When discussing testing strategies throughout the customer lifecycle, employees in optimization have more questions than executable solutions. The struggles most organizations face are not about technology. Instead, their challenges are process related. They want to redefine their culture to be one of experimentation, shift away from short–term thinking and learn to connect qualitative and quantitative data into actionable testing strategies. A common testing strategy is focusing on tests to immediately optimize revenue. This approach doesn't always consider high-yield users, or future plans to improve customer satisfaction – whether it is improving interaction or increasing brand loyalty. However, for many companies, the most profitable customers are small segments. Understanding these users and tailoring testing strategies to reach them is critical.

23. Defendant's Vendor Sponsorship and participation in the 2017 Click Summit conference exemplifies the highly related business focus and goods and services of Defendant and Brooks Bell and a shared industry and consumer audience.

24. Defendant and Brooks Bell continued to develop their business relationship in 2018 through 2021 and had ongoing communications and in-person meetings on various partner opportunities, including but not limited to 1) discussions in 2018 of potential subleasing of desk and conference room space from Defendant by Brooks Bell in San Francisco, in-person visits from Brooks Bell's president at the Defendant's office in San Francisco in 2018, and 2) email discussions in 2018 regarding attendance at the Opticon conference where Defendant and Brooks Bell had nearby exhibit booths, and 3) in 2019 regarding joint meetings between Defendant and Brooks Bell to discuss business pitches to third parties, and 4) in August 2019 regarding a meeting between Defendant and Brooks Bell to discuss a joint business lunch with an educational component for Q4 2019.

25. In December 2020, Defendant and Brooks Bell met to discuss a referral and partnership opportunity. In the meeting, Defendant provided Brooks Bell representatives a demo of certain aspects of the Heap platform. Likewise, Brooks Bell presented its capabilities to the

Defendant representative, including a discussion of the Brooks Bell ILLUMINATE product services. The plan was to have more cross-training and co-marketing opportunities to allow Defendant and Brooks Bell to provide strong and informed recommendations to their customers.

26. On December 21, 2020, Defendant executed its "HEAP Global Marketing and Referral Agreement," a true and accurate copy of which is attached hereto as Exhibit 6 and incorporated herein by reference, which states that "Heap and Partner [Brooks Bell] believe there are significant synergies between the two organizations that offer the opportunity for the Parties to jointly market the other's products and services." This agreement has an effective date of January 27, 2021.

27. Defendant and Brooks Bell provide highly related and competing goods and services and upon information and belief in some instances to the same third-party customers.

28. Defendant knowingly and willingly sought to benefit from the substantial goodwill in the ILLUMINATE Mark to identify, market, advertise, distribute, offer for sale and sell Defendant's own various goods and services, including website optimization software, analytic services, and related goods and services.

29. Brooks Bell has never authorized, permitted, or licensed the Defendant to use any variation of any of the ILLUMINATE Mark.

30. Defendant's use of the ILLUMINATE Mark on its competing goods and services, including website optimization software, analytic services, and related goods and services, is likely to confuse, mislead and deceive the relevant consuming public by falsely suggesting that Defendant's goods or services, are endorsed, sponsored, manufactured, distributed, marketed, or sold by Brooks Bell, which they are not.

31. Defendant has improperly received fees from the unauthorized use of the ILLUMINATE Mark to which Defendant was not entitled.

32. Brooks Bell served a cease and desist letter on Defendant on June 17, 2022 asserting its rights in the ILLUMINATE Mark.

33. Defendant responded on July 14, 2022, denying that Defendant's use of ILLUMINATE constitutes trademark use, and the likelihood of confusion, and rejecting Brooks Bell's request to cease and desist.

34. Brooks Bell served a Notice of Infringement letter to Defendant on August 2, 2022.

35. Defendant responded on January 5, 2023 rejecting Brooks Bell's request to cease and desist.

36. As of today, Defendant continues to use its Infringing Marks in relation to its services.

37. Defendant's unlawful conduct has resulted, and unless restrained by the Court, will continue to result in unjust enrichment for Defendant and irreparable harm to Brooks Bell, for which Brooks Bell lacks an adequate remedy at law.

**COUNT I – FEDERAL TRADEMARK INFRINGEMENT**

38. Brooks Bell incorporates by reference, as if fully restated herein, the allegations contained in paragraphs 1 through 37 above.

39. Defendant's Infringing Marks are used in connection with its sale, offering for sale, distribution or advertising of its goods and services.

40. Defendant's goods and/or services were sold in the United States in interstate commerce.

41. Such sales knowingly and willfully infringed Brooks Bell's ILLUMINATE Mark.

42. Defendant's use of the Infringing Marks is likely to cause confusion in the marketplace and is likely to cause mistake or to deceive consumers in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

43. As a direct and proximate result of Defendant's trademark infringement, Brooks Bell has been damaged within the meaning of 15 U.S.C. § 1114 et seq.

44. Defendant's conduct has caused damage to Brooks Bell and its business.

45. Brooks Bell is further entitled to disgorge Defendant's profits for its willful sales and unjust enrichment.

46. Brooks Bell is entitled to recover from Defendant all damages it has sustained from Defendant's unlawful and infringing conduct, as well as the profits Defendant has obtained or allowed others to obtain from such conduct, in an amount to be proved at trial and to be trebled pursuant to 15 U.S.C. § 1117.

47. Defendant's conduct has been willful and deliberate, and amounts to exceptional circumstances, justifying an award of reasonable attorneys' fees and costs to Brooks Bell pursuant to 15 U.S.C. § 1117.

48. Unless preliminarily and permanently enjoined, Defendant's conduct will cause Brooks Bell irreparable injury for which Brooks Bell lacks an adequate remedy at law.

**COUNT II – FEDERAL UNFAIR COMPETITION**

49. Brooks Bell incorporates by reference, as if fully restated herein, the allegations contained in paragraphs 1 through 48 above.

50. Defendant has willfully and consciously committed trademark infringement by using in commerce one or more marks that are identical and confusingly similar to the ILLUMINATE Mark on or in connection with the sale of goods and services, in a way that is likely

10
Case 5:23-cv-00292-BO-RN   Document 1   Filed 06/01/23   Page 10 of 14

to cause confusion, mistake or deception as to whether Defendant has a connection with Brooks Bell, or as to the origin, sponsorship, or approval of Defendant's good and services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

51. The use of the infringing trademarks in marketing, and other actions alleged herein, constitute proscribed acts of unfair competition.

52. The harm of such unfair competition outweighs its utility, has the effect of confusing and deceiving consumers, and trades off the goodwill of Brooks Bell.

53. On information and belief, such unfair competition was designed specifically to, and willfully does, maximize the likelihood of confusion.

54. Brooks Bell has suffered resulting damages and Defendant has enjoyed resulting profits from the confusion, in an amount to be established upon proof at trial.

55. Defendant's acts of unfair competition have caused and will continue to cause damage to Plaintiffs in an amount to be determined at trial.

56. Brooks Bell is entitled to damages, and further entitled to an accounting of infringing profits as unjust enrichment, for willfulness or for deterrence.

57. As a direct and proximate consequence of the unfair competition complained of herein, Brooks Bell has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendant from committing further acts of infringement

58. Defendant's conduct has been willful and deliberate, and amounts to exceptional circumstances, justifying an award of reasonable attorneys' fees and costs to Brooks Bell pursuant to 15 U.S.C. § 1117.

## COUNT III – UNFAIR COMPETITION – COMMON LAW

59. Brooks Bell incorporates by reference, as if fully restated herein, the allegations contained in paragraphs 1 through 58 above.

60. In advertising its services, Defendant further misrepresented the character of its business by suggesting a connection with Brooks Bell.

61. Each of Defendant's acts and omissions alleged herein, including trademark infringement and unfair competition, harms Brooks Bell and constitutes unlawful, unfair, or fraudulent business acts or practices, unfair, deceptive, untrue, or misleading advertising, and/or false advertising under the common law.

62. Defendant has engaged in unfair competition by the acts alleged herein.

63. Defendant's acts and omissions alleged herein constitute unfair business practices because the harm of these business practices outweighs the utility, if any, of these business practices, and are unscrupulous and injurious to consumers.

64. Defendant's acts and omissions alleged herein constitute unlawful business practices because Defendant's conduct is forbidden by multiple laws, including but not limited to 15 U.S.C. § 1125(a), as well as the common laws, laws of the State of North Carolina and laws of the United States.

65. Defendant's acts and omissions alleged herein constitute fraudulent business practices because consumers are likely to be deceived.

66. Defendant has engaged in these activities willfully and consciously.

67. Defendant's activities have caused and will continue to cause damage to Brooks Bell, in an amount to be determined at trial.

68. As a direct and proximate consequence of the infringement complained of herein, Brooks Bell has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendant from committing further acts of infringement.

69. Brooks Bell is informed and believes, and on that basis alleges that Defendant's actions were adoptively willful, willfully blind, intentional, malicious, deliberate and in bad faith, such that punitive damages are justified and reasonable, at an amount to be proved at trial, and so as to also qualify for enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

## PRAYER FOR RELIEF

WHEREFORE, Brooks Bell prays for the following relief:

A. Judgment in Brooks Bell's favor on all claims asserted against Defendant;

B. An order from the Court preliminarily and permanently enjoining Defendant and their affiliates, subsidiaries, parents, employees, officers, directors, agents, representatives and all others working in concert with Defendant from:

1) Using any marks or names that are so similar to the ILLUMINATE Mark to create a likelihood of confusion, mistake or deception;

2) Selling, offering for sale, marketing, advertising, assigning, or otherwise transferring software using any marks or names that are so similar to the ILLUMINATE Mark, to any third party or the relevant consuming public;

3) Doing any other act likely to induce the mistaken belief that goods or services offered by such persons are in any way affiliated with, connected with, endorsed by, certified by or associated with Brooks Bell;

4) That the Court order Defendant to file with the Court and serve on Brooks Bell, within thirty (30) days of the issuance of such order, a report in writing and under oath setting forth in detail the manner and form of Defendant's compliance with all Court-ordered injunctive relief;

C. An award to Brooks Bell of the actual and compensatory damages caused to Brooks Bell by Defendant's unlawful and infringing conduct, and a disgorgement of all profits made by Defendants or other persons or entities, from their unlawful and infringing conduct, in an amount to be proven at trial and trebled pursuant to 15 U.S.C. § 1117;

D. An award to Brooks Bell of the reasonable attorneys' fees and costs incurred by Brooks Bell in this matter;

E. Such other relief to Brooks Bell as the Court deems just and proper; and

F. A trial by jury on all issues so triable herein.

This the 1st day of June, 2023.

WYRICK ROBBINS YATES & PONTON LLP

By: /s/ Charles George
Charles George
(NC Bar No. 21003)
Devon White
(NC Bar No. 28862)
Post Office Drawer 17803
Raleigh, North Carolina 27619-7803
Telephone: 919-781-4000
Facsimile: 919-781-4865
cgeorge@wyrick.com
dwhite@wyrick.com

*Attorneys for Plaintiff Brooks Bell Interactive, Inc.*